# Commonwealth of Pennsylvania *v.* William H. Clark et al. Appellants.

*Practice, Q. S.—Cutting down trees—Proceedings on appeal from justice.*

On an appeal from proceedings instituted before a justice, for wrongfully cutting down ornamental trees, under the act of June 8, 1881, P. L. 82, the proper method of procedure is followed when the defendants are indicted and the case tried de novo.

The question of the insufficiency of the justice's record in such an action is immaterial,—the only conviction reviewable is that in the quarter sessions. If defendants had wished to test the regularity of the justice's record they should have proceeded by certiorari or motion to quash.

*Practice, Q. S.—Refusal to read points—General charge.*

In a trial in the quarter sessions it is not error to refuse specifically to read and discuss before a jury all the points, when the only point which could have been affirmed was fully and emphatically covered by the general charge.

If the law applicable to the case is plainly, fully and accurately stated, the party has no cause of complaint should the judge choose to express it in his own words.

*Statutes—Repeal—Cutting down trees—Acts of 1881 and 1891.*

The act of 1881, P. L. 82, is not repealed by the act of June 2, 1891, P. L. 170. The latter act provides for a method of recovery of damages for cutting trees along a public highway whether exercised regularly or irregularly under the right of eminent domain. The act of 1881 was intended to punish wrongdoers. There is no inconsistency between these statutes.

*Criminal law—Destruction of trees—Question for jury.*

The question whether trees alleged to have been wantonly destroyed were ornamental within the meaning of the act of 1881, P. L. 82, is properly for the jury, as also whether the cutting was " wanton, reckless and useless."

*Constitutional law—Statutes—Title—Acts of 1881 and 1895.*

The title need not schedule nor index the contents of the act; it is enough that in a general way attention is called to the matters contained therein.

The words " et cetera " in the title of the acts of June 8, 1881, P. L. 82, and June 18, 1895, P. L. 196, refer to things generally the same as those specifically specified, and therefore embrace trees, plants, flowers and the like.

Argued Nov. 9, 1896. Appeal, No. 54, Nov. T., 1896, by defendants, from judgment and sentence of Q. S. Berks Co., December Term, 1895, No. 199, on verdict of guilty. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Indictment for wrongfully cutting ornamental trees contrary to the act of June 8, 1881.

The defendants were the servants and employees of the American Telephone & Telegraph Company, and were at work on the 23d day of November, 1895, along a public road repairing the lines in pursuit of their employment, in stringing additional wires and strengthening their line and repairing said line in general.

Along this public road and over a small strip of land lying between said road and the river Schuylkill belonging to Dr. Marshall the prosecutor, extended the poles and wires of the defendant company which had been erected in September, 1889, under and by virtue of an agreement with a prior owner of the land by virtue of which compensation was received "for cutting and removing all trees along my property in Union Township Pennsylvania that will interfere with the wires of the American T. & T. Co." On this strip of land was a thick growth of para-

dise trees and a few locust trees.   It was alleged by the commonwealth that these trees were cut and the defendants were charged with willfully and wrongfully cutting down ornamental trees.   The defendants were accorded a hearing before a justice of the peace, refused to pay the fine, and after conviction of said offense before the justice, entered bail to answer the said charge before the court of quarter sessions.   The grand jury found a true bill.   The case being tried before a jury, defendants were convicted and sentenced by the court to pay a penalty of $50.00 each or in default of payment thereof to undergo imprisonment of fifty days each in the county prison of Berks county.   Defendants appealed.

The defendants submitted the following points, which the court refused either to affirm or to charge the jury on any or all of them.

### POINTS.

(1) There cannot be a conviction of the defendants in this case because the remedy of the prosecution, if any, is under the act of June 2, 1891.

(2) There cannot be a conviction of the defendants in this case, because the act of June 8, 1881, under which this prosecution is brought, was repealed by the act of June 2, 1891, so far as it relates to the offense charged in the bill of indictment, and the act of June 18, 1895, does not apply.

(3) There cannot be a conviction of the defendants in this case, because the acts of June 8, 1881, and June 18, 1895, are unconstitutional, so far as they relate to the offense charged in this case in that the titles to said acts are defective, because they do not include the word " trees."

(4) If you believe the evidence of the defendants in this case, it is your duty to acquit, because the trees alleged to have been destroyed, were not ornamental trees within the meaning of the acts of June 8, 1881, and June 18, 1895.

(5) It is the duty of the jury to acquit in this case because the evidence shows the acts complained of were not done willfully and maliciously but under an honest belief in title and under a claim of right.

(6) The evidence in this case shows that the acts done by the defendants were done under and by virtue of an agreement or permission granted by John B. Wilson, the former owner, to the

defendants' company, of which permission or agreement or the rights of the defendant thereunder, the prosecutor, Marshall, had actual notice in law, and by which agreement he is bound, and therefore the jury should acquit.

(7) Under all the evidence in this case, it is the duty of the jury to acquit.

(8) There can be no conviction in this case, because the proceedings of the justice are on their face irregular and void.

The court charged the jury as follows :

The question of defendants' guilt depends upon proof beyond a reasonable doubt that their acts amounted to willful trespass upon the prosecutor's land and wrongful cutting of ornamental trees belonging to him.   If the trees cut are not shown to have been ornamental defendants are entitled to acquittal; and so, if their acts were not willful and wrongful.   The American Telephone & Telegraph Company had the right to put up additional cross-bars and string additional wires if in its judgment desirable, and to enter upon the prosecutor's land and cut or trim away from time to time as much of any trees interfering with its line as was reasonably necessary to keep even the lower wires clear of such interference, and to that extent the right of the company was a protection to the defendants, its employees.

But an unnecessary cutting of trees not interfering, or a cutting of any to an extent palpably unnecessary to prevent interference, and any wanton, reckless and useless destruction of trees would be in excess of the company's rights; and if the jury are satisfied that the trees injured were ornamental, and that the injury done to them was in excess of the company's rights as explained, and wanton, reckless and useless, then defendants may be found guilty.

Before verdict, counsel for defendants excepted to the charge of the court and the refusal of the points submitted, whereupon bill sealed.

Motion for a new trial in arrest of judgment was refused by the court.

*Errors assigned* were, (1–8) refusal to charge the jury on defendants' points, reciting same.

*Henry D. Saylor* of *Gotwalts & Saylor*, with him *Reber & O'Reilly*, for appellants.—There can be no conviction in this case, because the acts of June 8, 1881, and June 18, 1895, so far as the acts of the defendants complained of are concerned, have been repealed by the act of June 2, 1891, P. L. 170.

The act complained of was not willful and malicious: See Chapman v. Comn., 5 Whart. 427; Bouvier's Law Dictionary, 91; 12 Whart. Criminal Law, sec. 1070, 1073.

The record of the justice in this case is insufficient in law to sustain the conviction, because the record of summary convictions must contain an information or charge; a summons or warrant; the appearance or nonappearance; the defendant's confession or defense; the evidence if he does not confess, etc.: Reed v. Wood, 1 Chester, 346; Com. v. Kinter, 1 Wilcox, 3; Hoffman v. Comm., 123 Pa. 75.

*Herbert R. Green*, with him *Henry D. Green* and *Adam B. Rieser*, district attorney, for appellee.

OPINION BY WICKHAM, J., December 7, 1896:

The appellants, who were the defendants in the court below, were convicted of willfully entering upon the land of Dr. John Marshall; and then and there wrongfully cutting down a number of ornamental trees, contrary to the act of June 8, 1881, P. L. 82 (amended by the act of June 18, 1895, P. L. 196). They claimed to be employees of the American Telephone and Telegraph Company, and acting under its instructions.

The proceedings were instituted before a justice of the peace, as provided by the act of 1881, and carried by the defendants, on appeal, into the court of quarter sessions. There they were indicted and the case tried de novo. The method of proceedure adopted in the quarter sessions, we think, was the correct one, looking at the peculiar phraseology of the statute. The act gives a defendant before the magistrate the right to an appeal, without a special allowance, and provides that he shall be held on bail to answer "a charge of misdemeanor." As a consequence, the right to have the grand jury pass on the charge and a traverse jury try it anew, if a true bill be found, cannot be denied. Where an offense is declared, by general words, a misdemeanor and made triable originally or on appeal in the

quarter sessions without more, it must be assumed that it shall be tried as a misdemeanor, that is, disposed of according to the course of the common law, and not summarily before the judge or judges. This question was adverted to, but not decided in Hoffman v. Commonwealth, 123 Pa. 75.

The title to the act of 1881, which is repeated in the amending act of 1895, reads as follows: "An act to protect fruit, gardens, growing crops, grass, et cetera, and punish trespass." The body of the act makes it punishable to "wilfully enter or break down through or over any field, orchard, garden or yard fence, hot-bed or green-house," and "to wrongfully club, stone, cut, break, bark or otherwise mutilate or damage any field crop, nut, fruit or ornamental tree, shrub, bush, plant or vine, trellis, arbor, hot-bed, or green-house," or to "trample or anywise injure any grain, grass, vines, vegetables or other growing crop."

It is contended in behalf of the defendants, that the acts of 1881 and 1895 are, as to them and others similarly situated, unconstitutional, because the titles do not include the word "trees." To this we cannot assent. The title need not schedule nor index the contents of the act. It is enough that in a general way attention is called to the matters contained therein. The words "et cetera" in the titles under consideration refer to things generically the same as those particularly specified, and therefore embrace trees, plants, flowers and the like. Had the body of the act included mines or domestic animals or agricultural implements as subjects of the trespasses to be punished, it might well be said that as to these things, the titles gave no notice. But they suggest with sufficient clearness to every one who reads that, by reading on, he will likely find something relating to ornamental or useful trees, plants or shrubbery. This is enough: Allegheny County Home's Appeal, 77 Pa. 77.

The objection that the trees were not ornamental was properly left to the jury, as was also the question whether the cutting was "wanton, reckless and useless;" and the defendants have no reason to complain of the charge in these respects.

Even if the receipt given by Dr. Marshall's predecessor in title to the defendants' employers, can be held as an agreement to permit other and subsequent cutting of trees,—a question not decided in the court below, nor necessary to be considered here,—it surely did not authorize the wanton and reckless de-

struction for which alone the defendants were tried and convicted.

Nor can we agree to the position that the act of 1881 was repealed or made inapplicable as to the defendants and others similarly situated, by the act of June 2, 1891, P. L. 170, entitled " An act providing for the recovery of damages to trees along the public highways, by telegraph, telephone and electric light companies." The latter act was intended to enable landowners to recover compensation for injuries caused by cutting of trees, under the right of eminent domain, whether exercised regularly or irregularly. The act under which the defendants were convicted was intended to punish wrongdoers and deter others from following their evil example. There is no inconsistency between these statutes. Each has its appropriate office and can and should stand.

It is further alleged that the record of the justice is insufficient to sustain the conviction. As the case stands, the only conviction we can look at is the one that was had in the quarter sessions. If the defendants had desired to test the sufficiency or regularity of the justice's record, they should have proceeded by certiorari or motion to quash. By taking an appeal they got the benefit of a jury trial, and they cannot now deliver themselves through objections to the record of the proceedings superseded by their appeal and the proceedings thereon. The magistrate's transcript, when brought into the quarter sessions, served merely as a foundation for the indictment. If it, or the indictment, were deemed insufficient, there should have been a motion made to dismiss or quash.

Complaint is also made by the defendants that their points were not read to and discussed before the jury. Of the eight points only one—the fourth—could have been affirmed, and the law, as therein stated, was fully and emphatically given to the jury in the general charge. It was not necessary to repeat the instruction, and the defendants could not be harmed by the refusal of the point, as the jury did not know what it contained. If a defendant has the right to insist upon an instruction being given more than once, there is no reason why he should not be entitled to demand a dozen repetitions thereof. He cannot dictate the language of the court, or insist that his legal propositions shall be answered in any set form.

"If the law applicable to his case is plainly, fully and accurately stated, he has no cause of complaint, though the judge choose to express it in his own words:" Commonwealth v. McManus, 143 Pa. 64. Where a point must be answered adversely it is not error to refuse to answer it at all: Werkheiser v. Werkheiser, 6 W. & S. 184. The failure to affirm is equivalent to a denial. The rule sustained by the last citation seems to be yet applicable in criminal cases, except in trials for murder and voluntary manslaughter, where by section 58 of the act of March 31, 1860, P. L. 427, the court is required to answer every written point fully and file both point and answer. The meaning of this section is considered in Commonwealth v. McManus, supra. The act of March 24, 1877, P. L. 38, making it the duty of the judges to reduce the answers to the points to writing and read them to the jury, refers only to trials in the common pleas.

Ordinarily, it is fairer to the defendant to refrain from reading aloud the points refused, as the jury, seeing, perhaps, a half score of props knocked from under the defense, may conclude that it has little left to stand on.

The argument of the learned counsel for the appellants that the judge should read to the jury every mistaken proposition of law, offered in behalf of the defense, before refusing it, is not sound. It is enough to file the point and the answer where an exception is taken to the latter. Thus the defendant can obtain the benefit of the refusal on appeal. That the jury are, in a sense, the judges of the law and the fact in criminal cases, does not, as is contended, make it the duty of the judge to call the attention of the jurors to legal propositions which, in his opinion, are clearly erroneous. It is his right, and as well his duty, to exclude not only from the consideration, but as well from the hearing of the jury, incompetent evidence, instead of admitting it and then telling the jurors to disregard it. And it is hard to see why he should read out, merely to refute, an utterly untenable statement as to the law. This view will hardly be seriously questioned, save by those who think that ex parte law, offered in behalf of a defendant, should be weighed by the jury against the judicial utterances of the court, and be held to primarily possess the same authority.

We do not mean to deny the right of a defendant, in a crim-

inal trial, by himself and his counsel, to state to the jury, in the presence of the court, what he believes to be the law of his case. That is not the question before us. We merely say that there is no error committed by the court in refusing, in a case like this, to read to the jury inadequate or misleading statements of the law, which should not be affirmed; nor in declining to make known to the jury and affirm even a correct legal proposition, where the latter is fully and fairly set forth in the general charge.

If, as was held in Commonwealth v. McManus, supra,—a case which came under the operation of section 58 of the act of March 31, 1860,— it is enough to state the law applicable to the defense "plainly, fully and accurately" in the general charge, then the defendants here have no cause for complaint. They were fairly tried and given the benefit of everything that could justly be invoked to relieve them. They admitted the cutting, and the jury were told that, in order to convict, they must find that the trees were ornamental and that the injury done to them was "wanton, reckless and useless." On sufficient evidence, the jury found all these matters in favor of the commonwealth.

The specifications of error are overruled, the judgment is affirmed, and it is ordered that the record be remitted to the court below, to the end that its sentence may be executed.