# Marshall *v.* American Telegraph and Telephone Company.

*Telegraph companies—Cutting trees—Act of June 2, 1891, P. L. 170.*

The Act of June 2, 1891, P. L. 170, relating to the cutting of trees by telegraph and telephone companies, is very general in its provisions, and will cover any damages which may be suffered by reason of the cutting of trees whether planted by the roadside or on enclosed or unenclosed land adjoining the same, if done in the exercise of the right of eminent domain. If, however, there has been negligence or wantonness or unnecessary cutting, the remedy is by an action of trespass.

*Telegraph companies—Statutes—Acts of June 8, 1881, P. L. 82, and June 2, 1891, P. L. 170—Repeal.*

The Act of June 8, 1881, P. L. 82, relating to the wanton destruction of trees was not repealed by the Act of June 2, 1891, P. L. 170, entitled "An act providing for the recovery of damages to trees along public highways by telegraph, telephone and electric light companies."

In a proceeding under the Act of June 2, 1891, P. L. 170, to recover damages for the cutting of trees by a telegraph company, the defense that the plaintiff received a part of the damages awarded in proceedings under the Act of June 8, 1881, P. L. 82, cannot be considered where it appears that the record of the court of quarter sessions in the proceedings under the act of June 8, 1881, has not been offered in evidence.

*Telegraph companies—Damages—Cutting trees—Act of June 2, 1891, P. L. 170.*

In a proceeding to assess damages against a telegraph company under the Act of June 2, 1891, P. L. 170, for cutting trees, the measure of damages is the value of the property before and the value of the property after the cutting of the trees.

Where a property is used for a summer residence, to measure the damages by the value of the young and growing trees which were cut down, for commercial purposes, would be manifestly wrong.

Argued Nov. 13, 1900. Appeal, No. 4, Oct. T., 1900, by defendant, from judgment of C. P. Berks Co., Jan. T., 1898, No. 63, on verdict for plaintiff, in case of John Marshall v. The American Telegraph and Telephone Company. Before Rice, P. J., Beaver, Orlady, W. W. Porter and W. D. Porter, JJ. Affirmed.

Appeal from report of viewers. Before Ermentrout, P. J.

From the record it appeared that viewers were appointed to assess damages for loss occasioned by the cutting of trees in the erection of telegraph wires.

A witness for the plaintiff was asked this question:

" Q. What, in your judgment, would be the difference in the market value of that property before this injury, the destruction of these trees and after the destruction as affected by the destruction ? "

Mr. Jones : Objected to as not being the proper measure of damages. The act of assembly provides for trimming or cutting trees which may interfere with the construction and maintenance of the line and the value of the trees, therefore, is the only measure of damages.

The Court : Admitted. Exception and bill sealed. [6]

Defendant's points were among others as follows :

2. The defendant company having the right of way for its wires and having the right to trim or cut trees which obstructed the way, became liable to the owner of the property for the damage resulting from the trimming or cutting of trees in the way, for which damage there could be but one action at law, and if there was a recovery of damages by, or a settlement for damages with, the plaintiff or any one of his predecessors in title to the land, this action cannot be maintained, and the uncontradicted evidence being that the land, now owned by the plaintiff, was acquired immediately from one John B. Wilson, and the receipt of the said John B. Wilson for compensation in full for cutting and removing of trees along his property in Union township, Pennsylvania, that will interfere with wires of the American Telegraph & Telephone Company, being in

evidence and admitted by plaintiff to be genuine, the injury of which complaint is made in this proceeding, has been paid for and satisfied and the plaintiff is not entitled to recover. *Answer:* Refused. [1]

3. Under all the facts your verdict must be for the defendant. *Answer:* Refused. [2]

The court charged the jury in part as follows:

[But there is an element in this case beyond the trees that interfere with the wires. The plaintiff has shown by a witness, if he is to be believed—and there is nothing in this case that would seem to the court to affect his credibility as a witness—that, of the sixty-eight trees cut down, thirty trees in no wise interfered with this line, and that, therefore, as this receipt simply contemplated payment for the trees that would interfere with the wires, the plaintiff would still have a right to recover whatever damages may have been done by the cutting of these trees which in no wise interfered with the wires. Mr. John Flannery says there were thirty trees that in no wise interfered with the line. If you believe that was the number of trees, then it will be for the jury to determine their nature, character and size and what effect the cutting of those trees might have upon the market value of this property.] [3]

[In order to arrive at market value it is customary to show the price of land in the immediate neighborhood. It is customary to place upon the stand people living in the neighborhood or the vicinity well acquainted with the property, who have a general idea of the market value, and then give their opinion, because as long as property has not been put up in the market and no bids have been received, the evidence of witnesses competent to testify is received, and those opinions are submitted to the jury, so that, taking into consideration the property, its uses, its location, its improvements, its nature and character, the buildings, everything upon it, the jury may be enabled to ascertain what the real value of the property may be in the market. These opinions are submitted to the jury and their value is to be determined by the data which the various witnesses may give in support of their opinion. Is he acquainted with the property; does he know the market value of land in the neighborhood; has he knowledge of the property, and,

judged by that standard of value, all the opinions are taken into consideration by the jury. It is not the selling price at a sale that is the test of value. Sometimes property is put up through a forced sale; sometimes people part with their property through necessity; sometimes they are hard up and compelled to sell; sometimes a fancy price may be obtained for a property, more than it is worth. Consider the testimony, the uses to which the property may be put, its adaptation for any particular purpose to which it is applicable; if, by reason of its location, its improvements, it is specially adapted to any particular use, if it is worth more for that use than for any other, its market value would be measured according to that.] [4]

[So you should take this property. You take it as it stands there with its buildings and its improvements, its adaptation for any particular purpose. If as a residence it is worth more for that particular use than for any other, its market value would be measured according to that. But it is not the piece of ground on which the house stands that you value, but you take into consideration the effect upon the whole property which the destruction of thirty trees, or whatever number you find did not interfere with the wires, had upon the market value of this property.

Then you put the case in this shape: What was this property fairly worth, its market value right before the telephone company cut down the trees, and after the trees have been removed from the property, taken away, what would that property have been worth, and the difference is the measure of damages which this jury will find.] [5]

Verdict for plaintiff for $737. On remittitur filed, judgment was entered for $400.

*Errors assigned* were (1–5) above instructions, quoting them. (6) Ruling on evidence, quoting the bill of exceptions.

*Richmond L. Jones*, for appellant.—The damages sustained by Marshall for the trespass having been adjudged by due process of law in the quarter sessions and the penalty paid, the trespass was avenged.

In an action to recover damages for the taking of property by right of eminent domain, compensation can be allowed only

for property lawfully taken, injured, or destroyed, and an action of trespass would not lie for that purpose.. Acts of trespass cannot be received in evidence in an action of assumpsit which, under the rules of court, is the form prescribed for trying damage cases under the law of eminent domain: Gilmore v. Pittsburg, etc., R. R. Co., 104 Pa. 275 ; Williamsport, etc., R. R. Co. v. Phila., etc., R. R. Co., 141 Pa. 407 ; Sedgwick on Damages, sec. 1107.

Where trees are cut and trimmed or cut under the act of 1891, the measure of damages is the value of the trees.

*Herbert R. Green*, with him *Henry D. Green*, for appellee.— No record of the criminal prosecution was offered in evidence in this case and it is not therefore before this court.

The act of 1881 was not repealed by the act of 1891: Com. v. Clark, 3 Pa. Superior Ct. 147.

The value of trees depends largely upon their situation and surroundings, and it is difficult to conceive what could furnish a better gauge or test of their value than the effect of their removal or destruction upon the property of which they formed a part.

OPINION BY BEAVER, J., April 16, 1901:

The plaintiff petitioned the court below for the appointment of viewers to assess damages claimed by him from the defendant, by reason of the cutting of trees in the erection or maintenance of their lines through his property, under the provisions of the Act of June 2, 1891, P. L. 170. Upon appeal from the award of the viewers, an issue was framed by agreement under the form of an action of assumpsit, upon which it was tried before a jury in the court below. From the judgment entered upon the verdict rendered in that case, as reduced in amount by the court, this appeal is taken.

It is to be observed that the act of 1891, above referred to, does not in any way limit the plaintiff in his claim for damages as to the width or extent within which the cutting is done. The provisions of the act are very general and will cover any damages which may be suffered by reason of the cutting of trees, whether planted by the roadside or on enclosed or unenclosed land adjoining the same, if done in the exercise of the right of

eminent domain.  If, however, there had been negligence or wantonness or unnecessary cutting the remedy would have been trespass: Stork v. Phila., 195 Pa. 101; Chatham Street, 16 Pa. Superior Ct. 103.  In view of this, the distinction sought to be made between what was necessary to be cut as interfering with the wires, and what was done outside of the immediate reach of the wires becomes unimportant; in view of all the evidence in the case which fails to show any prescribed limits for the right of way.

It is alleged by the defendant that this case was before us in Com. v. Clark et al., 3 Pa. Superior Ct. 141, and that, because the defendants in that case were convicted of wilfully entering upon the land of the present plaintiff and then and there wrongfully cutting down a number of ornamental trees, contrary to the Act of June 8, 1881, P. L. 82, amended by the Act of June 18, 1895, P. L. 196, which cutting was the same as that complained of in the present proceeding; and, inasmuch as the fine imposed upon the defendants in that case, as provided by the act of assembly, went one half to the party or parties injured to pay for damages sustained, and the remaining one half to the school fund of the district in which said offense was committed, the plaintiff is not entitled to recover in this action.  It was said by our lamented Brother WICKHAM, who wrote the opinion in that case: " Nor can we agree to the position that the act of 1881, was repealed or made inapplicable as to the defendants and others similarly situated by the Act of June 2, 1891, P. L. 170, entitled ' An act providing for the recovery of damages to trees along public highways by telegraph, telephone and electric light companies.'  The latter act was intended to enable landowners to recover compensation for injuries caused by cutting of trees, under the right of eminent domain, whether exercised regularly or irregularly.  The act, under which the defendants were convicted, was intended to punish wrongdoers and deter others from following their evil example.  There is no inconsistency between these statutes.  Each has its proper office and can and should stand."  Whether or not the plaintiff is estopped from pursuing his remedy under the act of 1891, by reason of the fact that he accepted the one half of the penalty imposed upon the defendants in Com. v. Clark, as the act expresses it, for damages sustained, might become a question, if it were reg-

ularly raised, but the record in that case was not in evidence in the court below.   It is true that in an objection to the plaintiff's general offer to show the cutting on the trial of the case, it was alleged " that the record of the court of quarter sessions of Berks county shows that the injury complained of, in so far as it was a trespass, was adjudicated in a prosecution by the commonwealth against William H. Clark and others, the employees alleged to have done the injury, in which they were convicted and fined ; " but this record was not then, nor was it afterwards, offered in evidence.   If the admissions made by the plaintiff in his paper-book had been made in the court below, they might have been regarded as equivalent to the admission of the record in evidence but, so far as the record shows, no such admissions were made at the trial, and we must dispose of the case upon what was before the court in the trial below and not upon what appears here.   We can, therefore, see no objection to a recovery, as the record is presented to us, the original receipt of Wilson, the owner of the land at the time the line was originally constructed, being manifestly insufficient to cover all that was done by the defendant upon the property of the plaintiff.   The effect given to it by the court was certainly all that could properly attach to it.

The only other serious question in the case is as to the measure of damages.   The court admitted testimony showing the value of the property before and its value after the cutting, and submitted the case to the jury to find the damages, in accordance with the " before and after " rule.   In this we think there was no error.   The commercial idea that the only good tree is a dead tree—that is, that it is only good for lumber—no longer prevails.   A tree has much more than a commercial value.   Its influence upon climate and water supply has come to be regarded as a question to be reckoned with in determining the conditions under which our increasingly dense population is to live and flourish.   Its beauty and sightliness have value in the landscape.   Its shade refreshes and shelters and, even as an investment, young trees have an actual money value which cannot be disregarded, or measured by their present value as timber trees.   The purpose for which the property was used by plaintiff is also to be considered.   It was his summer residence and, as such, the trees added greatly to its value.   To measure the

damages in this case, therefore, by the value of the young and growing trees which were cut down, under the direction of the defendant, by their value for commercial purposes would be manifestly wrong. We know of no better rule than the one which was adopted by the court and submitted to the jury. It is true that, in adopting this rule, sentiment enters more or less into the estimate put upon the value of the trees by some of the witnesses but it is sentiment of a substantial character which may well influence the owner or intending or prospective purchasers, and this was counterbalanced, or at least attempted to be, by the testimony of the defendants, in which the difference in value based upon the use of the property owned by the plaintiff as a mere farm was given and, of course, had weight in the minds of a jury of practical men.

The case was clearly one for the jury and, after carefully considering all the assignments of error and a perusal of all the testimony, we can see nothing, either in what was submitted to the jury or in the manner in which it was submitted, which would justify a reversal. Judgment affirmed.