## Zeller v. Pennsylvania Turnpike Commission (No. 2)

*John L. Hamaker*, for plaintiff.

*K. L. Shirk*, for defendant.

SCHAEFFER, P. J., January 21, 1955.—This is a rule for a new trial in a condemnation case arising from the construction of the eastern extension of the Pennsylvania Turnpike in the northern section of Lancaster County. The viewers awarded to plaintiff the sum of $18,250. Defendant appealed and the jury rendered a verdict in favor of plaintiff for $6,500.

On December 10, 1946, plaintiff, by agreement duly recorded, purchased the right to cut and remove certain standing timber on the farm then owned by Charles E. May and wife containing 162 acres in Clay Township, Lancaster County, Pa. The agreement also

provided for a right-of-way in favor of plaintiff to timberland, together with the use of one acre of land to erect and operate a sawmill thereon. The term of the agreement was for 15 years until December 10, 1961.

On or about August 30, 1948, defendant, Pennsylvania Turnpike Commission, condemned some of this farm land for turnpike purposes which resulted in cutting off plaintiff's access under the agreement from a township road to the 80 acres of standing timber in controversy. Plaintiff did not own any of the land taken by the Turnpike Commission.

Plaintiff has filed eight reasons for a new trial. Not all of these reasons are pressed, but it is plaintiff's contention that the court "erred in refusing to sustain plaintiff's second, fifth and sixth points for charge and also erred in suggesting to the jury that there were benefits in the case to the plaintiff which they could take into consideration in arriving at their verdict".

Plaintiff's points in question and the court's rulings are as follows:

"(2) That the Pennsylvania Turnpike Commission, the defendant, condemned, took and destroyed all of these rights in the construction of the Eastern Extension of the Pennsylvania Turnpike.

"The court: That point is refused. That is a question of fact for the jury to find from all the evidence in this case. (5) That the measure of damages to be applied in this case is the difference between the value of the standing timber 'on the stump' immediately before the condemnation by the defendant and the value of said timber 'on the stump' immediately after the turnpike was constructed and is affected by it.

"The court: That point in that form is refused. The court has already instructed you as to the measure of damages you are to apply in this case in reaching a verdict. (6) That since the condemnation plaintiff has had no lawful access to the standing timber which he

purchased nor has he been able to exercise any other rights which were granted to him by the agreement and these rights, therefore, became valueless in their entirety to the plaintiff.

"The court: That point is refused. That is for the jury to determine under the law and the evidence."

The court in its charge to the jury said, inter alia:

"It is for you to determine what the amount of the damages is which plaintiff sustained as the result of the construction of the turnpike to the extent to which it affected his rights in the timberland in question. . . . The measure of damages in this case is the difference between the fair market value of the right, title and interest of plaintiff in the timberland in controversy taken as a whole under the written agreement, immediately before and immediately after the condemnation and taking for turnpike purposes, that is taking of the right-of-way of plaintiff to the timberland. None of the timberland was actually taken, but his only access according to the testimony, but that is for you to find from the testimony, was cut off by the construction of this highway, and accordingly the plaintiff contends that his timber is valueless since the construction of the highway and the cutting off of his right-of-way. Some of the elements to be considered in arriving at the market value thereof are accessibility to the timberland, the purpose for which it was to be used and can be used under the written contract. The status at the time of the condemnation and taking by the Pennsylvania Turnpike Commission of the land in question for turnpike purposes, which resulted in cutting off plaintiff's only road to the timber on the land governs in determining what are the nature and the amount of damages sustained by plaintiff. However, the availability of the right of plaintiff to enter on the land and cut the timber for a period of about two and one-half years prior to the condemnation by the Pennsylvania

Turnpike Commission must also be considered as an element in fixing the amount of damages. Any other benefits which plaintiff has under the contract for cutting and removing the timber and sawing it into commercial lumber for his own use no matter who the owner may be up until December 10, 1961, as shown by the evidence, must likewise be taken into consideration in reaching your verdict."

Plaintiff contends that the evidence was undisputed that plaintiff had no access to the timber after the condemnation and, therefore, the Pennsylvania Turnpike Commission had completely and totally destroyed the value of plaintiff's rights under his written agreement.

The measure of damages applied in this case is not disputed. However, it is "the plaintiff's contention that it was not applied in accordance with the conceded facts". No case has been found on the exact question involved in the instant case. Where growing trees have been destroyed in the exercise of the right of eminent domain, it has been decided that the measure of damages is the difference between the market value of the whole property before the cutting and after the cutting: Marshall v. American Telegraph and Telephone Company, 16 Pa. Superior Ct. 615; Garber v. The Columbia Telephone Company, 20 Lanc. 378. In the instant case the timber is still standing and can be cut or removed at any time during the next seven years by plaintiff, provided there is access to the timberland. There was evidence that there was an old abandoned road leading to the east. The right-of-way used by plaintiff from the barn to the timberland was a cart road or trail. Witnesses for defendant testified that the plaintiff's rights in the timberland had a value after the taking. On the other hand, plaintiff's witnesses stated that there was no such value. The offer of defendant to prove that it had condemned other land for use by plaintiff as a right-of-way or access to the tim-

berland and as a site for a sawmill was disallowed. It was offered by defendant in connection with defendant's theory as to the applicable measure of damages as stated in the notes of testimony "in that the plaintiff is required to minimize his damages" by the new right-of-way obtained by defendant and tendered to plaintiff, but refused by him. It may have been admissible in evidence to show future use and accessibility to the timberland, but it was not offered for that purpose. Its exclusion can hardly be considered as detrimental to plaintiff.

Plaintiff's second point for charge to the jury was not actually refused but only the form in which it was presented. Plaintiff's first point for charge to the jury, which was affirmed, was practically the same as plaintiff's second point, but it was set forth more in detail and in different form. See Huth et al. v. Allegheny County, 339 Pa. 228. Both points presented questions of fact for the jury to find from all the evidence in the case and the jury was so instructed.

Plaintiff's fifth point for charge to the jury likewise was not actually refused, but only the form in which it was presented. The court added that the measure of damages as contained in the general charge to the jury should be followed in reaching a verdict. Furthermore, it appears in the notes of testimony that the court allowed the offer of plaintiff to present his evidence on his theory of the measure of damages which was practically adopted by the court.

Plaintiff's sixth point for charge to the jury, hereinbefore stated, also involved a question of fact. The point was refused and the jury was instructed accordingly.

Plaintiff's argument narrows itself to the ultimate question whether the court should have charged as a matter of law that defendant's taking destroyed all of plaintiff's rights. The court took the position that

this was a question of fact for the jury to decide. In Marine Coal Company v. Pittsburgh M. & Y. Railroad Company, 246 Pa. 478, it is decided that on ascertaining the value of the whole tract prior to the taking, it is the duty of the jury to consider not only its present use and condition but any use to which it was then adapted or any prospective use which at the time gave it a present value, excluding, however, any use which was merely speculative and to which it could not reasonably be anticipated the land would in the future be applied.

The court concludes that the case was properly submitted to the jury.

And now, January 21, 1955, the rule for a new trial is discharged.