## J. Goodloe et al. *v.* B. R. Rogers.

When it may be inferred that it entered into the contemplation of the parties to a contract that a sugar mill and engine, which the manufacturer undertook to put up within a given time, on the plantation of a planter, were for the purpose of taking off a certain crop, a failure to put it up in time to take off that crop, entitles the planter to recover damages for his loss of crop, and extra wages paid in consequence of the delay for alterations and repairs, in putting the sugar mill and steam engine in operation.

APPEAL from the District Court of the parish of St. Landry, *Overton,* J.

*T. H, Lewis,* for plaintiffs and appellants:

We contend,

1st. That the only damages that can be allowed, in this case, where no bad faith is charged and where none exists, are such as immediately result from the defectiveness of the machinery and the cost of repairs, and cannot include consequential damages, such as the loss of cane, &c. Pothier Ob. No. 161.

2d. That only such damages, as can be said reasonably to have entered into the contemplation of the parties, at the time of making the contract can be allowed on its passive violation, and those here allowed exceed that measure. La. C. 1928, No. 1. Pothier Ob. No. 160.

3d. There should be reciprocity of obligation, in commutative contracts, and no construction should be adopted which by its effects, might ruin one of the parties, on his failure to comply with his obligation; but could only subject the other to the payment of interest on his failure to comply with his obligation; and the intention to enter into such an unequal contract cannot, in fairness be presumed. La. C. 1761. 1 Story Eq. Juris. § 64 f.

4th. Even supposing the rule adopted by the Judge *a quo* to be correct, he has allowed a larger amount of damages than the facts in the case warrant.

*Swayze & Moore,* and *Dupré & King,* for defendant:

The plaintiffs are proprietors of an iron foundry, and are in the habit of furnishing mills and engines for the southern sugar planters. They knew from them, why mills and engines are always contracted for, to be put up at a particular period; that the cane crop is one sensibly influenced by the vicissitudes of the seasons, and that in this latitude it is often an uncertain crop, resulting from those very vicissitudes. Hence, plaintiffs knew when they entered into the contract, that if the cane crop was not taken off by a particular period, that a heavy, if not a total loss would result to the defendant. They stipulated in their contract to furnish the defendant with such a mill and engine as would enable him to avoid this loss and those damages. They were then such damages as were contemplated or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract. La. Code, Art. 1928.

It is not pretended that the defendant has not complied faithfully with his part of the contract (except the payment of the price which he was not bound to pay). It is not pretended that he has not used every exertion to make the mill and engine available, and finding those exertions ineffectual, that he did not make every other effort practicable to save himself from impending loss.

But the Code informs us that the obligation of contracts extending to whatever is incident to such contracts, the party who violates them is liable as one of the incidents of his obligations, to the payment of the damages which the other party has suffered by his default, that this violation may be either active or passive and that when the object of the contract is any thing but the payment of money, the damages due to the creditor for its breach, are the amount of loss he has sustained and the profit of which he has been deprived. La. Code, Art. 1924–5 and 8.

Nor is it pretended that the plaintiffs were prevented by fortuitous events or irresistible force from performing their obligations; but we find one of them, (Mr. *Goodloe*) admitting that a part of the machinery was not constructed, as he intended it should be, a fact which must have been known to him before

they commenced to put up the machinery on the plantation of the defendant. Nay, a fact which must have been known to him before it was shipped from the foundry in Cincinnati to its place of destination.

The plaintiffs then, if not guilty of fraud or bad faith, are chargeable with gross negligence (crassa negligentia) and inattention, the consequences of which were as disastrous to the defendant, as if the former had been practised upon him by the plaintiffs and for which the law holds them equally responsible.

Toullier discusses this question fully, and with the lucidity characteristic of his mind. He puts the case of one (Titius) who hires to another vehicles to gather his wine crop in a vineyard distant from his domicil, whither the latter had gone to make the necessary preparations, hireing workmen, &c., but *Titius* fails to furnish the vehicles, and the vintager is compelled to hire other vehicles at a higher price, or not being able to procure other vehicles is compelled to discharge his workmen and to postpone the taking off his crop. Some days after, a hail storm ensues and destroys his crop, that he had previously sold to pay his creditors. He then proposes the questions: "Me devra-t-il le prix de ma récolte, en tout ou en partie? Devra t-il m'indemniser de la perte que j'éprouve par la vente de mon bien, et par la faillite qui en a été la suite?"

"Il est d'abord évident que cette dernière perte, si elle peut être considérée comme une suite de la faute de *Titius*, en est une suite trop éloignée pour qu'il en doive répondre. La cause directe, la cause immédiate de cette perte, est dans le mauvais état de mes affaires, que *Titius* n'a pu ni dû prévoir, sa condition ne doit pas être pire pour avoir manqué de parole à telle personne plutôt qu'à telle autre, à une personne dont les affaires étaient délabrées, plutôt qu'à une personne dont les affaires étaient en bon état. Cette perte n'est point la suite immédiate et directe de la faute de *Titius;* elle a été produite par une cause étrangère, qui ne peut lui être imputée, et qu'il ne pouvait prévoir." 6 Toullier, pp. 294, 295.

The distinction here drawn is a clear one. There is no necessary connection between the vintager's debts and his crop; those debts may have been owing before he commenced planting. They may not have grown out of his planting operations; but they may have been the result of vicious courses or of expensive and careless habits. At all events, it was his misfortune, if not his fault, to be so embarrassed when the storm came upon him.

The seizure and sale of his property did not destroy his crop, nor would the retaining of his property have prevented the destruction of his crop. *Titius* had nothing to do with his debts nor with the seizure and sale of his property to satisfy them, but if he was prevented or disabled from gathering his crop before the occurrence of the hail storm, in consequence of the act or fault of *Titius*, we shall see whether *Titius* is responsible for the loss that ensued:

"Mais la perte de ma recolte, la devra-t-il entière? En devra-t-il une partie? N'en devra-t-il rien? Il faut distinguer. Il n'en devra rien s'il justifie qu'il a été empêché d'exécuter son obligation par suite d'une force majeure ou d'un cas fortuit; en un mot, par une cause étrangère qui ne peut lui être imputée. Par exemple, si ses chevaux et ses voitures avait été pris à la requête du magistrat pour les besoins du gouvernement. Si ses chevaux avaient péri par accident ou étaient restés malades. Ces événemens sont des causes étrangères qui ne peuvent lui être imputées. Mais si je n'ai pu me procurer d'autres voitures, ou ce qui est la même chose, si je n'ai pu m'en procurer avant l'orage qui a détruit ma recolte, il semble que, d'après la disposition de l'article 1151, *Titius* doit m'indemniser de la perte entière de ma recolte; car on ne peut raisonnablement nier que cette perte ne soit une suite immédiate et directe de l'inexécution de la convention. Toutes mes mesures étaient prises, le jour fixé, mes vendangeurs engagés, des voitures louées, &c., &c. Si elles n'avaient pas manqué, il est prouvé que ma vendange eut été faite, emmenée, et qu'elle n'eut pas été détruite par l'orage survenu quelques jours après. Dira-t-on que la cause immédiate et directe de la perte de ma recolte a été l'orage et non pas la faute de *Titius*." 6 Toullier, pp. 295-6-7.

The principle established in the hypothetical case put by Toullier is broader and more rigorous in its operation, than the one we are contending for in the case at bar. In the former, *Titius* is held responsible for the consequences of an unexpected and uncertain event, (a hail storm), an event which was not foreseen and could not have been foreseen. We seek to hold the plaintiffs liable for the consequences of an event which is as certain as that the seasons

succeed each other.  We know that the fruits of the earth, ripened by an autum-    GOODLOE
nal sun, unless gathered, are doomed to perish by the frosts and winds of win-    *v*
ter.  Hence, man looks and prepares for the appointed visits and consequences    ROGERS.
of the seasons, with as much confidence and care as he does for returning
night and day, or for other phenomena occurring under the operation of the
laws of nature.

In vain then, is it asserted that plaintiffs did not foresee the loss of that crop,
in the event of a non-compliance with their contract.  Equally vain, would it
be to assert they did not know its salvation rested with them alone, and that
the defendant was powerless and wholly at their mercy.

But we are not left to the commentaries and reasoning of foreign jurists for
light on this question.  The principle is a settled one in our jurisprudence.

In the case of *Findley* v. *Breedlove*, Bradford & Robeson, 4 M. R. N. S., page
105, a steam engine was furnished to the defendants for the price of which
they were sued, and the payment of which they resisted, on the ground that
the machinery was imperfect and defective.  They further claimed damages in
reconvention for the loss sustained by them.

The plaintiffs in that case as in the case at bar, attempted to screen them-
selves from the payment of damages by contending that their responsibility
was limited to the value of the machinery which should prove defective, and
that their warranty only extended to replacing those parts which were ascer-
tained to be defective, but the court ruled that the law extends the obligation
much farther.

After defining damages to be the loss which a person has sustained or the
gain which he has missed, the court go on to remark, " In practice this right is
restrained to such injury or damage, as is the direct and immediate consequence
of the failure of the contract.  The writers on the civil law illustrate this rule
by many examples which it is unnecessary to notice.  We think that where
the owner of a boat contracts for an engine, and loses the use of her for several
months, in consequence of the defects in the machinery, that the money actu-
ally expended and the loss of gain directly resulting from these defects comes
within the definition just given."

BUCHANAN, J.  ( VOORHIES. J., absent.)  The contract of plaintiffs was to
build and put in operation on the plantation of defendant, a sugar mill and
steam engine.  The contract was made on the 8th January, 1849, and the
plaintiffs agreed to deliver the mill and engine at the Plaquemines landing, on
or before the 18th June, 1849.  On his part, the defendant bound himself to
haul the said machinery to his sugar-house; to furnish the necessary brick-
work and timber for putting up said machinery, and a suitable number of
hands to assist in putting up the same, within thirty days from the delivery of
the same at Plaquemines.

The law of Louisiana on the measure of damages for the inexecution of con-
tracts is found in Articles 1928, 2294, 2295 and following of the Civil Code.

" Every person is responsible for the damage he occasions, not merely by his
act, but by his negligence, his imprudence, or his want of skill."  Art. 2295.

" When the object of the contract is any thing but the payment of money,
the damages due to the creditor for its breach are the amount of the loss he has
sustained and the profit of which he has been deprived, under the following
exceptions and modifications :

1st.  When the debtor has been guilty of no fraud or bad faith, he is liable
only for such damages as were contemplated, or may reasonably be supposed
to have entered into the contemplation of the parties at the time of the con-
tract."  C. C. 1928.

It appears to us evident that it entered into the contemplation of the plaintiffs
as well as of the defendant, that the sugar mill and steam engine in question
were to grind the crop of sugar cane of 1849, on the defendant's plantation.
The plaintiffs were extensive manufacturers of these articles in Cincinnati for

the Louisiana market, and the contract was made by *James Goodloe*, in person, on a plantation in Opelousas.

This being conceded, it follows that the parties must have contemplated that the making of the crop of 1849, might be delayed or frustrated by a failure to fulfil the contract, the damage therefrom resulting might, therefore, amount to the total loss of the crop, or to a partial loss.

For such loss, we consider the plaintiffs under their contract, would be liable, according to the law cited.

Applying this law to the facts of this case, we find it in proof,

1st. That plaintiffs were guilty of negligence in executing their contract, by making a right hand engine instead of a left hand engine, which their written contract called for.

2d. That they failed to execute their contract, in this, that the castings had defects which caused their breakage, when the mill was put in operation.

3d. That the plaintiffs were guilty of want of skill in putting up the sugar mill out of line, by which it was strained and broken.

4th. That the alterations and repairs, necessary for changing the engine from right hand to left hand, and for repairing the breakage, &c., caused a delay of twenty-one days in the grinding of defendant's crop.

5th. That defendant was compelled to windrow his crop to preserve it from the frost, by reason of the above delay; occasioning a deficiency of sugar, estimated by witnesses at from ten to forty per cent. of the crop.

6th. That defendant paid, in consequence of the delay, twenty-one days extra wages of six hired hands, at one dollar per day each, as well as extra time of an engineer.

Under the law and the evidence, we consider the defendant entitled to recover damages for his loss of crop and extra wages paid, in consequence of the delay for alterations and repairs in putting the sugar mill and steam engine in operation: said delay being caused by plaintiffs' fault, and by their failure to execute their contract.

The measure of damages for the inexecution of contracts, as we have seen, by Article 1928 of the Louisiana Code, is the amount of loss sustained by the obligee, and profit of which he has been deprived, subject to the modification that when there is no bad faith or fraud, the obligor is liable only for damages that may reasonably be supposed to have been contemplated by the parties at the time of the contract.

The rule with its modification, is taken verbatim from the Code Napoleon, Articles 1149 and 1150. And those Articles of the French Code in turn, were borrowed from Pothier on Obligations, No. 159 and 160. It must not be supposed, however, that Pothier was the author of the rule. He tells us himself that it is as old as the Roman Law, and gives us the text of the Pandects in which it was expressed. It is known to American jurists by the name of Consequential damages; and those are distinguished into proximate and remote. Mr. Sedgwick, in the third chapter of his treatise on the measure of Damages, has collected authorities on this subject from many different quarters. From his researches, it appears that the doctrine of the civil and common law is not materially different. In the case of *Armstrong* v. *Percy*, 5th Wendell, the language of the Supreme Court of New York was as follows: " Consequential damages may naturally arise from the breach of a contract, but they often depend on the peculiar circumstances of the case. Such are allowed without being stated in the pleadings, as are the fair legal and natural result of the

breach of the defendants' agreement—if they do not thus result the jury cannot allow them, unless they are stated in the declaration, and established by proofs." And in Greenleaf on Evidence, vol. 2, p. 210, it is said, " the damage to be recovered must always be the natural and proximate consequence of the act complained of."

It seems to us that the loss of the defendant's crop, and the extra wages of hands hired by him, were, in the language of these authors, the natural and proximate results of the failure of plaintiffs to comply with their obligation; or as an authority from the Scottish law, cited by Sedgwick, expresses it, a certain resulting damage. Lord Kaine's Principles of Equity, Book 1, part 1, ch. 1, § 5.

Our own Reports contain a case where the facts were precisely similar to the present one, with the exception that the sugar mill was not contracted to be put in operation by the manufacturer.

The language of Judge Martin, in delivering the opinion of the court, was as follows : " In the present case, as no fraud or bad faith is alleged against the defendant, his liability must extend to such items as are to be presumed to have entered into his contemplation at the time of the contract. These are, the price of the mill—expenses of removing it to the appellants plantation, and of putting it up and taking it down—of attempts to render it available. These are the losses which must have been contemplated as attending the delivery of an insufficient mill. Next, the sugar and molasses, which the appellant failed to make ; these are the profits of which he was deprived." *Lobdell* v. *Parker*, 3d L. R. 332.

In that case, the remedy sought and awarded, was the rescission of the contract and damages in addition, for a defective sugar mill. The authority of Pothier was quoted in support of the views of the court, which appear to be conclusive of the right of the defendant to recover upon the proof adduced by him : and as the point is of great importance to the planting interest of this State, we think it unwise to disturb a precedent of more than twenty years standing ; especially when we find a decision in conformity thereto, made by our immediate predecessors. See case of *Rugeley* v. *Goodloe*, 7th Annual.

It is proper to observe, that doubts have been entertained by some members of the court, as to the measure of damages ; but they have been yielded to the considerations of the repeated decisions with regard to this particular class of contracts—in which the rules as to conventional obligations in general, are to be taken in connection with the provisions of the Code pertinent to the subject matter.

A calculation which we have made of the losses suffered, and of the profits of which the defendant has been deprived, in the present case, based upon the elements laid down in *Lobdell* v. *Parker*, has resulted in a less sum than was allowed by the District Judge. We also think the plaintiff entitled under his contract to a privilege upon the mill and engine.

It is therefore adjudged and decreed, that the judgment of the District Court be amended, that the damages of defendant be assessed at the sum of twenty-one hundred and seventy-four dollars ; and that plaintiffs recover of defendant the difference between that sum and the price of the contract sued upon, to wit : fifteen hundred and twenty-six dollars, with interest at eight per cent. per annum from the 1st February, 1851, with costs in both courts, and privilege upon the sugar mill and engine made by plaintiffs for defendant.