**W. H. FLEMING, Plaintiff**

v.

**MRS. M. HAGEMANN, Defendant**

No. 24

District Court of the Virgin Islands

Frederiksted Sub-Judicial District
Saint Croix

October 25, 1923

McKEAN, *Judge*

This action was tried before a jury and resulted in a verdict for plaintiff in the sum of $10,178.00, Danish West Indies currency. On an agreement of counsel, an extension of time was granted for filing motion to set aside the verdict and grant a new trial. Title III, chapter 21, section 4, of the Code (1921; 5 V.I.C. § 1 note), provides: "That in all cases of motions for a new trial the grounds thereof shall be plainly specified, and no cause of new trial not so stated shall be considered or regarded by the Court."

Defendant averred that "this motion (for a new trial) is based upon the files and records in this cause and affidavits hereafter to be filed." The argument of the motion was entirely oral. When the motion was argued counsel for defense admitted that he had no such affidavits. To paraphrase the language of Brown, District Judge, in the case of Williams v. Alaska Commercial Company, 2 Alaska 43, a copy of Title II (III), chapter 21, section 2 (5 V.I.C. § 1 note), subsections 4th, 5th, 6th, and 7th of the Code (1921), with the title of the cause added, would have subserved the same purpose as this motion insofar as the 1st, 9th, 10th, 11th and 15th grounds for the motion are concerned. The 7th ground, to wit: "The complaint in the above entitled cause does not state facts sufficient to constitute a cause of action and the allegations thereof do not support the verdict rendered," is in effect a demurrer. If it be taken as a demurrer it should have been filed prior to the trial of the issues. See Title III, chapters 7 and 8, of the Code (1921; 5 V.I.C. § 1 note).

At the outset of the argument counsel for defendant admitted that he had filed no specifications as to Ground No. 1, namely, "Errors of law appearing at the trial and excepted to by the defendant," and he also admitted that he was unable to specify any "Newly discovered evidence material to defendant's defense which he could not with reasonable diligence have discovered and produced on the trial." (Ground No. 15).

■ Grounds Nos. 9 and 10, namely, "Damages awarded by the jury are excessive and not supported by the evidence" and "Excessive damages appearing to have been given under the influence of passion or prejudice," may be considered together. Independent of the Code provisions requiring specification of grounds for a new trial, an analysis of the situation would show that these grounds as given are insufficient, for ordinarily a new trial will not be granted for excessiveness of damages unless affirmatively shown wherein they are excessive and to what extent. Clarke v. Whitaker, 19 Conn. 319, 48 Am. Dec. 160. It is hardly fair to ask a court to rule that a verdict has been excessive upon a mere general allegation, furnishing no criterion by which it can determine whether the damages are excessive or not, or, if excessive, in what amount they should have been assessed. In regard to the allegation that the verdict was manifestly rendered under the influence of passion and prejudice, the Court finds nothing in the record of this case which would justify it in finding that the jury had manifested passion or prejudice in the rendition of its verdict.

Grounds Nos. 2 and 3 may be considered together, as they raise an issue of law as to whether testimony should be admitted as to the number of hogsheads of sugar which should have been raised on the leased estate "Concordia", if the estate had been cultivated in a good

and proper manner. This issue was raised in the pleadings, it being alleged in the complaint:

"IV. That the defendant by the terms of the said lease agreement agreed, undertook and bound herself, by Section 4 thereof, as follows: 'The land leased shall be cultivated in a good and proper manner, and the buildings be kept in at least as good condition and repairs as they are in at present by the lessee at his own expense. The live-stock, implements and inventory to be kept in the same condition as at present.'

"V. That the Defendant has failed to cultivate the said land in a good and proper manner . . . . . That the Plaintiff turned over the said Estate "Concordia" to the Defendant in a good and proper, but not excessive, state of cultivation, there then being 150 acres of land in cane cultivation with growing canes thereon, and 90 acres of land in fallow, whereas the said estate has been delivered back to the Plaintiff with but 34 acres in a very poor state of cane cultivation and the balance of the estate is completely turned out and is in weeds and bush. That the Defendant has turned out 116 acres of land, and over, from cane cultivation, so that the plaintiff can reap no crop from said land during the next crop season, to the damage of Plaintiff in the sum of six thousand dollars ($6,000.); that the Defendant has, by failing to properly husband and cultivate the fallow land which she took over, and permitting land in cultivation of cane at the time she took possession to decrease, and thus increase the uncultivated area from 90 acres in fallow to 264 acres in weeds, sour grass and bush, has damaged the Plaintiff to the extent of the increased cost necessary to re-establish the said land in proper cane cultivation, or at least 150 acres in cane and 90 acres in proper fallow condition, which is thirty-seven hundred dollars ($3,700.) ;" etc. Defendant in her answer "denies

that she has failed to cultivate these said lands in a good and proper manner, when the said estate 'Concordia' was taken over by the Plaintiff on the 31st day of October, 1922," and also "denies that she has turned out 116 acres of land, or any other amount, or that Plaintiff has been damaged in the sum of six thousand dollars ($6,000.), or any other sum, or that said Defendant has been guilty of negligence in the cultivation of the said estate 'Concordia'," etc.

It will thus be seen that the contract of lease sued upon contemplates the cultivation by the lessee of estate "Concordia" as a cane-estate in a good and proper state of cultivation, and that such contemplation was in the minds of both parties thereto.

■ Wherever damages have been caused by breach of contract, and are such as may reasonably be supposed to have entered into the contemplation of the parties, the delinquent party is liable therefor. This may fairly be stated to be the law of all of the Lesser Antilles, for it is a principle laid down in the Code Napoleon (1 Poth. Oblig. 161, 162), which is the law of the French and Dutch colonies; as well as in the leading English case of Hadley v. Baxendale, 9 Exch. 353, 26 Eng. L. & Eq. 398, which is law in England and in the British colonies where English law obtains. In addition, it is law in most, if not all, American jurisdictions. Howard v. Stillwell & Bierce Mfg. Co., 139 U.S. 199, 11 S. Ct. 500, 35 L. Ed. 147; Taylor Mfg. Co. v. Hatcher Mfg. Co., 39 Fed. 440; Wallace v. Ah Sam, 71 Cal. 197, 60 Am. Rep. 534; Paducah Lumber Co. v. Paducah Water Supply Co. (Ky.) 7 L.R.A. 77; Grindle v. Eastern Express Co., 67 Me. 317, 24 Am. Rep. 31; Scott v. Boston & N. O. S.S. Co., 106 Mass. 468; Barnes v. W. U. Teleg. Co. (Nev.), 65 L.R.A. 666; Crater v. Binninger, 33 N.J.L. 513, 97 Am. Dec. 737; Booth v. S. D. R. M. Co., 69 N.Y. 487;

Stranahan Bros. Catering Co. v. Coit, 55 Ohio St. 398, 4 L.R.A. (n.s.) 506; Blagen v. Thompson (Or.), 18 L.R.A. 315; Clyde Coal Co. v. Pittsburgh & L. E. R. Co., 226 Pa. 391, 26 L.R.A. (n.s.) 1191; Sitton v. MacDonald, 25 S.C. 68, 60 Am. Rep. 484; Shepard v. Milwaukee Gaslight Co., 15 Wis. 318, 82 Am. Dec. 679.

██ The principle of Hadley v. Baxendale (supra) is also found in the decisions of the civil law jurisdiction of Louisiana. Goodloe v. Rogers, 9 La. Ann. 273, 61 Am. Dec. 205. In that case, the scholarly Mr. Justice Buchanan shows that the Louisiana code provision is taken verbatim from the Code Napoleon; and informs us that Pothier not only states the doctrine to be as old as the Roman law, but goes further by quoting the text of the Pandects in which it is expressed. In applying the rule, the Supreme Court of Louisiana allowed consequential damages for loss of sugar crop. In the much cited case of Masterson v. Mayor of Brooklyn, 7 Hill (N.Y.) 61, 42 Am. Dec. 38, the Court held that profits or advantages which are the direct and immediate fruits of a contract entered into are part and parcel of the contract itself, entering into and constituting a portion of the elements; something stipulated for. This case was cited with approval by Mr. Justice Strong, in the case of Hoy v. Grenoble, 34 Pa. St. 9, 75 Am. Dec. 628, wherein it was held that the measure of damages for breach of contract to employ plaintiff to cultivate a farm on shares is what he could have made on the farm. The underlying principle seems to be, that where loss of profits is a direct and necessary result of the defendant's acts, whether by breach of contract or tortious act, the damages are proximate and certain, since every man is presumed to intend the natural and probable result of his deliberate act.

"The law aims to allow full and complete compensation to an innocent party who has been damaged by the breach

of a contract or the commission of a tort. In practice, the law does not prove false to its theory by banning profits merely because of their nature as profits; but, upon the contrary, the law endeavors faithfully to realize its aim by allowing compensation for profits which it is reasonably certain would have been made, if the wrong complained of had not been done. Allison v. Chandler, 11 Mich. 542, 8 R.C.L. 501; Bredemeier v. Pacific Supply Co., 64 Or. 576, 131 Pac. 312; Fields v. Western Union Teleg. Co., 68 Or. 209, 217, 137 Pac. 200; McGinnis v. Studebaker, 75 Or. 519, L.R.A. 1916B, 868, 146 Pac. 825, Ann. Cas. 1917B; Feeney & B. Co. v. Stone, 89 Or. 360, 171 Pac. 569, 174 Pac. 152; Fletcher v. Fischer (Or.) 182 Pac. 823. In the absence of malice the law endeavors to compel reparation rather than punishment. When attempting to compel reparation, the difficulties encountered by the administrators of the law consist in the application rather than in the interpretation of the rules prescribed for the measurement of damages. There is no single rule applicable alike to all cases, involving profits which may be taken into account, when fixing the amount of compensation for the breach of a contract or the commission of a tort. In some cases profits constitute either the sole or one of the elements of damages, and therefore are to be taken as the measure of the amount of compensation; and in other cases profits constitute only an item of evidence to be taken into consideration, together with other evidence, by the jury when fixing the amount of compensation." Anderson v. Columbia Contract Co. (Or.) 7 A.L.R. 653, 665, 184 Pac. 240. In the present case loss of crop is an item of damage claimed by the plaintiff, and denied by the defendant, in the pleadings.

Taylor Mfg. Co. v. Hatcher Mfg. Co., 39 Fed. 440, is to the same effect as the case of Anderson v. Columbia Contract Co. (supra), the Court saying inter alia: "In his

39

copious and valuable work upon the law of damages, Mr. Sutherland announces this general proposition: A party to a contract is entitled to recover, against the other party, who violated it, damages for the profits he would have made out of it had it been performed. It is no objection to their recovery that they cannot be directly and absolutely proved. In the nature of things, the defendant having prevented such profits, direct and absolute proof is impossible. The injured party must, however, introduce evidence legally tending to establish damage, and legally sufficient to warrant a jury in coming to the conclusion that the damages they find have been sustained, but no greater degree of certainty in this proof is required than of any other fact which is essential to be established in a civil action. If there is no more certain method of arriving at the amount, the injured party is entitled to submit to the jury the particular facts which have transpired, and to show the whole transaction, which is the foundation of the claim, and expectation of profit, so far as any detail offered has a legal tendency to support such claim. 1 Suth. Dam. 113; citing Griffin v. Colver, 16 N.Y. 489; Giles v. O'Toole, 4 Barb. (N.Y. Sup. Ct.) 261; Newbrough v. Walker, 8 Gratt. (Va.) 16."

The theory upon which the defendant appears to have based the more important grounds of her motion for a new trial is, that damages for loss of crop are too remote and speculative to be allowed. It is true that there are numerous cases where offers of proof of such damages have been rejected because of remoteness. It will be noticed, however, that in a majority of such cases there is a safer and easier, as well as more just method of arriving at the damages. Short time perishable crops are particularly open to the objection that no one could calculate their probable outcome. Sugar-cane in the Island of St. Croix is a perennial, for a substantial portion of the

crop is garnered from "ratoons," (sugar-cane shoots). It does not enter into any system of rotation of crops, and when reaped and manufactured into sugar is not perishable. In St. Croix, land which is neglected or "turned out", as it is locally termed, quickly runs to "bush," and neglect for two or three years renders the land practically valueless for purposes of cultivation. When land has gone into "bush", great expenditure of time and labor is required to clear it and prepare it for cultivation. So much so is this the case that one of the planters who testified in this case, stated that a tract of land under cultivation is worth in the real-estate market twice what the same tract would be worth when "turned out" into "bush." It is held in a number of jurisdictions that in cases of perennials, the measure of damages is the difference in value of the land immediately before and immediately after the destruction or injury of such perennials. This rule has been adopted in: Georgia, L. & N. Rwy. Co. v. Kohlruss, 52 S.E. 166; Illinois, C. R. Co. v. Almond, 100 Ill. App. 530; Indiana, Chicago & E. Rwy. Co. v. Kern, 36 N.E. 381; Iowa, Rowe v. Chicago & N. W. R. Co., 71 N.W. 409; Kansas, Mo. Pac. Rwy. Co. v. Haynes, 42 Pac. 259; Missouri, Shannon v. Hannibal & St. J. Rwy. Co., 54 Mo. App. 223; New York, Evans v. Keystone Gas Co., 148 N.Y. 112; Pennsylvania, Marshall v. Am. Tel. & Tel. Co., 16 Pa. Super. Ct. 615; and South Carolina, Dent v. So. Bend Rwy. Co., 39 S.E. 527.

The Thirteenth Ground, namely, "error in refusing, upon request of Defendant, to instruct the Jury, as follows: 'that the possible or even probable profits which could have been realized but for the tortious act or breach of contract by the Defendant are too remote and cannot be recovered as damages' ", appears to be the basis of the Second and Third Grounds, just discussed. It would be a most serious defect in the law of this jurisdiction

were a defendant permitted to relieve himself from compensatory liability for breach of contract on the ground that his own default makes precise mathematical computation of damages difficult or impossible. Profits are not excluded from recovery, because they are profits; but when excluded, it is on the ground that there are no criteria by which to estimate the amount with the certainty on which the adjudications of courts, and the findings of juries should be based. In the case under discussion we have a reasonably certain standard by which to measure the probable crop which could have been reaped from estate "Concordia," had the defendant carried out her contractual obligation, namely, the fact that the 12-acre field known as "Field No. 20," produced nine hogsheads, which sold for $1,003.61.

Ground No. 4 hardly merits serious consideration. The point was raised at the trial, but really went to the weight of the testimony and not to its admissibility.

The Fifth Ground relates to a point which is not in issue nor relative to any fact in issue.

The Sixth Ground is based in an allegation replied to by defendant in her answer. She can hardly be permitted to admit the legal sufficiency of an allegation by replying thereto in her pleadings, and, after the issue thus raised has been decided against her, turn around and demur thereto.

The Twelfth Ground, "that there is no legally sufficient evidence in the case to show that the Plaintiff has suffered any damage in consequence of his failure to reap a crop in the year 1923, and that the question of damages to the crop which might have been harvested should be disregarded," is cumulative. The deposition of defendant's own witness, Viking Leonard Toren, is significant on this point. He states that he was manager of the estate "Con-

cordia" during the period it was under lease to the defendant. On cross-examination he testified, inter alia:

Q. Do you mean to say that a good and proper management would permit that piece of land to turn out into bush? Was that good management?
A. I refuse to answer.

\* \* \*

Q. Do you remember anything about Piece No. 1?
A. No.

\* \* \*

Q. But you did not weed it enough?
A. Yes.
Q. Piece No. 6, you said the same thing about that?
A. Yes.
Q. You admit that you did not weed Piece No. 6 enough?
A. I do.
Q. You said the same thing about Piece No. 7?
A. Perfectly right.
Q. You said the same thing about Piece No. 10?
A. Too much dry weather.
Q. Do you know at what time you planted Pieces Nos. 6, 7, and 10?
A. I cannot remember.
Q. You admit that all of them were not weeded sufficiently or as such could have been done more. You say the same thing of 12, 13, and 14?
A. Thirteen was died out the same as No. 2.
Q. And you admit that they were not weeded properly?
A. Yes, but when they were weeded, it was as good as any one would weed them.

\* \* \*

Q. Do you think, as manager of "Concordia" for four years, that Mr. Fleming has been damaged, and if that, how much in your mind is its approximate?
A. I can't answer that.
Q. In your opinion, has Mr. Fleming been damaged?
A. I told you yes.

43

Here we have the testimony of the defendant's own manager to the effect that the estate "Concordia" was not cultivated in a good and proper manner, and that the plaintiff was damnified. It may fairly be deduced from the rest of this witness's testimony, which it is unnecessary to set forth in extenso, that he believed it would not pay him to do so.

The testimony of other witnesses on this ground was sufficient to support a verdict.

It is unnecessary to discuss Ground No. 14.

In accordance with these views, defendant's motion to set aside the verdict and grant a new trial has been denied.