956 F.2d 275
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Vincent CATERINO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
James CATERINO, Defendant-Appellant.
 Nos. 90-50049, 90-50050.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 11, 1991.
Decided Feb. 21, 1992.
 
 Before BEEZER, CYNTHIA HOLCOMB HALL and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Vincent and James Caterino appeal their jury verdict convicting them of conspiracy, mail fraud, and wire fraud in violation of 18 U.S.C. §§ 371, 1341, 1343. In a separate, published opinion, we have vacated the Caterinos' sentences and remanded to the district court for resentencing. In this memorandum disposition, we reject the Caterinos' remaining contentions. We will not here restate the facts recited in the published opinion.
 
 
 3
 * Appellants raise ineffectiveness of counsel claims on direct appeal even though such claims are ordinarily heard in collateral proceedings. See United States v. Wagner, 834 F.2d 1474, 1482 (9th Cir.1987). Such claims are ordinarily heard on collateral review due to the need to develop an appropriate record regarding counsel's performance and because a lawyer is unlikely to challenge his own work as "ineffective". See Kimmelman v. Morrison, 477 U.S. 365, 378 (1986) ("[A] criminal defendant will rarely know that he has not been represented competently until after trial or appeal, usually when he consults another lawyer about his case."); United States v. Cronic, 466 U.S. 648, 667 n. 42 (1984) (rejecting argument that ineffectiveness claims may be heard only through petition for habeas corpus); Wagner, 834 F.2d at 1482-83 (need to develop record). Since the district court held a hearing before ruling on Appellants' motion for a new trial and the Caterinos each hired new lawyers after the verdict, we will review Appellants' claims.
 
 
 4
 * Vincent asserts that his Sixth Amendment right to counsel was violated because his lawyer, John Elekes, had previously advised him of the legality of Marco's business. Vincent argues that this advice created a conflict of interest between Elekes and Vincent because Elekes would have had an interest in covering up his incompetent advice regarding the legality of Marco. Consequently, Elekes would have supposedly avoided testifying even though his testimony, according to Vincent, could have helped establish an advice of counsel defense.
 
 
 5
 Ineffective assistance of counsel claims are mixed questions of law and fact. We defer to the district court's finding of what counsel did, but exercise our own judgment on the standard of performance and on the prejudice determination. Cuyler v. Sullivan, 446 U.S. 335, 342 (1980); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1980). For a claim based upon conflict of interest, Appellants must demonstrate an actual conflict. Sullivan, 446 U.S. at 349-50. For example, a lawyer's failure to cross-examine a prosecution witness in order to protect a co-defendant constitutes an actual conflict. Id. at 349 (citing Glasser v. United States, 315 U.S. 60 (1942)). On the other hand, circumstances that could potentially result in an actual conflict do not constitute a Sixth Amendment violation unless the defendant's representation is actually affected. Id. at 349 (citing Dukes v. Warden, 406 U.S. 250 (1972)). Once Appellants show an actual conflict, prejudice is presumed. Id.
 
 
 6
 The trial court conducted three days of hearings on Appellants' claims that they were denied effective assistance of counsel in deciding whether to grant a new trial. At the hearing, Elekes denied advising Vincent or any other defendant that Marco's practices were legal. The district court found Elekes' version of the story to be more credible than Vincent's. The district court also stated on several occasions that Elekes could not possibly have known all of the facts surrounding Marco's operation. Thus, reasoned the district court, Elekes' testimony would not support an advice of counsel defense. The judge's credibility determination, which is not clearly erroneous, undermines the factual predicate of Vincent's claim. Anderson v. Bessemer City, 470 U.S. 564, 574-75 (1985) (findings of fact set aside only if clearly erroneous and particular deference accorded to credibility determinations).
 
 
 7
 The district court's finding also undermines the basis of James' claims based upon the supposed conflict of interest between Vincent and Elekes.
 
 B
 
 8
 Appellants also argue that their attorneys made mistakes at trial serious enough to constitute a denial of their Sixth Amendment right to counsel. To prevail, Appellants must demonstrate that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment" and (2) the errors caused prejudice to the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Prejudice is shown by "errors so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. In each instance, even if we assume arguendo that errors were made, Appellants' claims fail the prejudice prong of Strickland.
 
 
 9
 * Appellants first argue that counsels' failure to call Vincent as a witness constituted ineffective assistance of counsel. Courts are generally unwilling to second-guess counsel's decision not to call a particular witness. See 2 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 11.10, at Supp. 53 (1984 & Supp.1991). In any case, this claim is destined to fail on the prejudice prong because, as Elekes believed and the district judge found at the post-trial hearing, Vincent's testimony would have made matters worse for all defendants. At the hearing, the district judge asked Vincent what he would have told the jury if he had testified at the trial. The record of his testimony shows him being caught in several lies and shadings of the truth. Thus, Appellants could not have suffered prejudice by Vincent's failure to testify.
 
 2
 
 10
 Appellants next argue that Elekes erred by alluding to Vincent's forthcoming testimony and then failing to call Vincent to the stand. Elekes told the jury in his opening statement that it would hear from Vincent. Near the end of one trial day, Elekes stated "Call Vincent Caterino." After a sidebar conference, the court adjourned for the day. The following day, Elekes rested Vincent's case without Vincent's testimony. Vincent argues that Elekes' anticipation of his testimony constituted ineffective assistance of counsel because it made his failure to testify appear to be an admission of guilt.
 
 
 11
 Elekes' allusions to Vincent's testimony are, however, "minor slips" which do not constitute ineffective assistance of counsel. See LaFave & Israel § 11.10, supra, at Supp. 53. We agree with the district court that these allusions were not significant in the overall context of the trial. Moreover, Elekes' behavior appears to have been reasonable in light of Vincent's apparent vacillation regarding his decision to testify or not. See infra Part II. Elekes' actions do not evidence ineffective assistance of counsel.
 
 3
 
 12
 Appellants next argue they were denied effective assistance of counsel because defense counsel failed to notice a sizeable error in a prosecution exhibit until it was corrected by the prosecution on its own initiative.
 
 
 13
 The prosecution introduced two pie charts depicting Marco's bank accounts. The charts overstated Marco's overhead by more than $1 million, and the trial court stated that the charts erroneously suggested a "slush fund" and should not have been admitted. Even if Elekes and Dougherty were derelict in failing to discover the error in the first place, however, the prejudice prong of Strickland is clearly not satisfied. First, testimony by the government agent authenticating the original, incorrect charts shows that, in addition to Marco running a large overhead account, large numbers of checks were written either to "Cash" or to pay for personal expenses of the six defendants. Second, while the "slush fund" implication may have reflected poorly on the Appellants' behavior, it did not go the central theory of the government's case which rested upon tape-recorded sales calls and the sales practices of Marco.
 
 
 14
 Third, Appellants benefited from Elekes' mocking cross-examination of the government investigator. Thus, this claim is meritless because Appellants cannot show that their lawyers' supposed error inflicted any damage upon their case. Indeed, the opportunity to impeach the government investigator may have benefited their defense.
 
 4
 
 15
 Appellants argue that Elekes and Dougherty erred by failing to introduce evidence of Marco customers who reaped profits from their Marco purchases. The government in its cross-examination of James and in its closing argument emphasized that not a single customer of Marco realized a profit. The district court took no testimony from either Elekes or Dougherty regarding this matter and made no finding on this issue, either as to the underlying facts of the profits or as to trial counsels' tactics. The record reveals only a proffer by the government that no more than 12 customers managed to receive more money from Marco than they paid, and that those 12 received that money either by tricking Marco or by filing complaints with their state Attorneys General.
 
 
 16
 We cannot say that the district court abused its discretion in failing to grant a new trial based upon this alleged evidence. "The district court has discretion over a motion for a new trial and there is a 'significant burden' on appellant to show an abuse of that discretion." United States v. Falsia, 724 F.2d 1339, 1343 (9th Cir.1983) (quoting United States v. Krasny, 607 F.2d 840, 845-46 (9th Cir.1979), cert. denied, 445 U.S. 942 (1980)). The district court stated that "I have never had any doubt that nothing could have happened at this trial [that] would have had any impact on that jury...." The district court did not abuse its discretion in denying the motion for new trial on this ground and by implicitly according more weight to the government's unchallenged and specific proffer than to Appellants' mere list of names and addresses.
 
 5
 
 17
 James' remaining complaints of inadequate counsel were not raised at the post-trial hearing and thus lack a proper factual foundation. These complaints center mainly on the quality and length of Dougherty's cross-examination of prosecution witnesses. In light of the strong burden on Appellants to demonstrate an abuse of discretion, we do not believe the district court erred by failing to hold a factual hearing on these claims when the district court had already observed the disputed proceedings.
 
 
 18
 Finally, Vincent disputes the district court's ruling excluding some dubiously relevant evidence. He offers for the first time on appeal another rationale for its admittance into evidence. "Absent plain error, a conviction will not be reversed on evidentiary grounds not revealed to the trial court at the time of the assertedly erroneous ruling...." United States v. Lara-Hernandez, 588 F.2d 272, 274 (9th Cir.1978). We see no plain error in the district court's rejection at trial of Vincent's farfetched relevancy argument and will therefore not consider his revamped theory.
 
 II
 
 19
 Vincent argues that Elekes rested his case before Vincent had his opportunity to testify. Vincent argues that his right to testify was thereby violated.
 
 
 20
 Vincent himself admitted at the post-trial hearing, however, that he knew of his right to testify even though his attorney was strongly opposed to invoking that right. After claiming repeatedly that he lacked the ability to act against his attorney's advice, Vincent stated: "I did feel I had the ability to go against the advice. I knew it was my decision, but my decision was weighed so heavily by what was told to me by my attorney."
 
 
 21
 Moreover, Dougherty testified at the hearing that Vincent vacillated on his decision whether to take the stand or not. According to Dougherty, Vincent expressed relief at not being subject to cross-examination. Moreover, Dougherty testified that Vincent expressed ratification of Elekes' good judgment in keeping him off the stand after Vincent saw the government cross-examine James.
 
 
 22
 Vincent's actual knowledge of his right to testify even though his attorney thought it to be a very bad idea goes far beyond the mere acquiescence required to waive the right to testify. United States v. Edwards, 897 F.2d 445 (9th Cir.1990), cert. denied, 111 S.Ct. 560 (1991) (defendant's silence at trial is sufficient waiver even if trial court takes no waiver on the record and defendant unaware of his right to testify). Vincent therefore waived his right to testify at trial by remaining silent.
 
 III
 
 23
 Appellants argue that the district court erred by instructing the jury that they could be found guilty on the basis of a deliberate ignorance standard. See United States v. Jewell, 532 F.2d 697, 704 (9th Cir.) (en banc), cert. denied, 426 U.S. 951 (1976). Appellants argue the instruction was inappropriate because wire and mail fraud require a specific intent to defraud. They also argue the instruction was inappropriate because there was no evidence of deliberate indifference. We review jury instructions as a whole and de novo. United States v. Sanchez-Robles, 927 F.2d 1070, 1073 (9th Cir.1991).
 
 
 24
 * To be convicted of wire or mail fraud, the government need only prove that Appellants were knowing participants in a fraudulent scheme utilizing the mails or interstate communications facilities. United States v. Diggs, 649 F.2d 731, 736 (9th Cir.), cert. denied, 454 U.S. 970 (1981). "[A]wareness of a high probability of fraud, coupled with shutting one's eyes to avoid learning the truth, may in some instances support a conviction for mail fraud." United States v. Price, 623 F.2d 587, 592 (9th Cir.), cert. denied, 449 U.S. 1016 (1980); see also United States v. McDonald, 576 F.2d 1350, 1358-59 (9th Cir.), cert. denied, 439 U.S. 830 (1978) ("reckless indifference" as to truth of statement is sufficient to constitute knowledge in mail fraud case). Thus, deliberate ignorance is an appropriate standard for a wire or mail fraud conviction.
 
 B
 
 25
 Appellants correctly point out that this court permits use of the Jewell instruction only in limited circumstances. The instruction is only appropriate where a defendant fails to investigate suspicious circumstances not amounting to direct evidence, and therefore actual knowledge, of criminal conduct. Sanchez-Robles, 927 F.2d at 1073-74.
 
 
 26
 Appellants were high-ranking officers of Marco. Yet they denied knowledge of important aspects of Marco's business which would have indicated its fraudulent nature to them. Vincent denied knowledge that salesmen were using misleading "pitch sheets" as scripts for telephone calls, but also stated that he took pains to ensure that Marco salesmen did not use such sheets. James, too, denied knowledge of the fraudulent pitch sheets as well as other aspects of Marco's operation. For example, he professes ignorance of the low prices at which Marco purchased its coins even though he was vice-president of sales. The government's brief details additional claims of denial.
 
 
 27
 Appellants' positions of responsibility at Marco coupled with the suspicious circumstances under which Marco operated rendered the Jewell instruction appropriate.
 
 IV
 
 28
 James argues that the district court inappropriately limited presentation of his defense theory by limiting his testimony about transactions with Dorothy Leedy, a Marco customer. He attempted to testify that Marco gave Leedy 10 coins as a gesture of good faith, but the trial court interrupted his testimony sua sponte. At a sidebar, the court stated that the "gift" to which James had referred was merely an option to purchase ten more coins. James repeatedly referred to the option as constituting part of Leedy's "position," as if she actually owned the coins when she actually held only an option to purchase the coins. Moreover, the option was, of course, worthless because the exercise price was far higher than the actual market price of the coins. The court thereafter told James' lawyer, Dougherty, that Dougherty could not facilitate his client's misrepresentations on the stand.
 
 
 29
 In his closing argument, Dougherty again referred to the option as a "gift," occasioning an objection and a sidebar conference. After sustaining the objection, the judge explained to the jury that James' testimony had confused a gift with an option and then cautioned the jury to draw its own conclusions.
 
 
 30
 The government argues that Dougherty's rather lame defense of James' testimony constituted a waiver of any objection. It is somewhat unclear to us whether Dougherty acquiesced or merely believed that the judge had ruled. We therefore proceed to the merits.
 
 
 31
 A federal judge may control the interrogation of witnesses and interrogate witnesses himself in order to insure the orderly and accurate presentation of evidence. Glasser, 315 U.S. at 82-83; United States v. Mostella, 802 F.2d 358, 361 (9th Cir.1986). Thus, a district judge may intervene in order to prevent a witness from misleading the jury. His actions in doing so are subject to review only for abuse of discretion. United States v. Taylor, 716 F.2d 701, 710 (9th Cir.1983) (citing Fed.R.Evid. 611(a)). Comments of the judge giving rise to a charge of advocacy or partiality are also reviewed for abuse of discretion. United States v. Greene, 698 F.2d 1364, 1374-75 (9th Cir.1983).
 
 
 32
 The post-trial hearing demonstrates that the judge did not abuse his discretion in preventing James from mischaracterizing evidence. James' testimony at the hearing was no more clear than at the trial and, in fact, was enormously confusing. At varying points in James' testimony, Mrs. Leedy owned 12, 22, 24, and 34 coins. It is quite clear from the hearing that James mischaracterized the original sales transaction from Leedy.
 
 
 33
 The district judge minimized his involvement in the trial by conducting most of his inquiries at sidebar conferences, out of the hearing of the jury. He also cautioned the jury to draw its own conclusions. See United States v. Ness, 652 F.2d 890, 893 (9th Cir.), cert. denied, 454 U.S. 1126 (1981) (cautionary instruction can remedy prejudicial inferences of comments by judge). Thus, James' claim lacks merit because the district court did not abuse its discretion and, in fact, acted appropriately to maintain the integrity of the trial.
 
 V
 
 34
 Appellants argue that the false testimony of witness Charles Dawson required a new trial. Dawson, a former Marco employee, testified that he had hand-copied a document to which he referred in his testimony. In fact, defense attorneys realized Dawson could not have written that document because it was seized by the Postal Inspectors before Dawson began working for Marco. On cross-examination, defense counsel revealed the error.
 
 
 35
 The trial judge found explicitly that the defense received a "windfall" from the opportunity to impeach Dawson because Dawson's only error was that the piece of paper in his hand was not he one he had actually hand-copied. The district court determined that Dawson's mistake was made in good faith because Dawson had confused two similar documents, and the mistake did not affect the substance of his testimony. Because the district court found that the opportunity to impeach outweighed any prejudice to Appellants, this claim lacks merit because no abuse of discretion appears.[1]
 
 VI
 
 36
 James Caterino argues that the government's cross-examination of him exceeded its proper bounds and thereby violated his right against self-incrimination. When a defendant takes the witness stand, he waives the privilege against self-incrimination as a protection against cross-examination. Brown v. United States, 356 U.S. 148, 155-56 (1958). The scope of the defendant's waiver is coextensive with the scope of proper cross-examination. United States v. Black, 767 F.2d 1334, 1341 (9th Cir.), cert. denied, 474 U.S. 1022 (1985). The proper scope is all subjects "reasonably related" to the subjects covered by the defendant's testimony on direct examination. Id. That determination is left to the discretion of the trial judge. Id.
 
 
 37
 Although James' factual arguments on this point are rather confused, he appears to be arguing that since he only testified as to the Dorothy Leedy transactions, the government exceeded the scope of proper cross-examination by asking him about other Marco transactions. James' testimony on direct examination, however, does discuss some general matters about Marco. Even if James had discussed only the Leedy transactions, other transactions would be reasonably related to James' testimony that his involvement in Marco did not constitute fraud.
 
 
 38
 James cites two occasions in the record where the district court misunderstood the waiver rule to mean that, once a criminal defendant takes the stand, the defendant may be called by the government for any purpose. Although the judge did indeed mischaracterize the waiver rule, the scope of James' cross-examination did not actually exceed topics "reasonably related" to his direct testimony. Any error was therefore harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 16, 24 (1967) (harmless error standard applies to alleged violations of right against self-incrimination).
 
 VII
 
 39
 Appellants argue that cumulative errors in the trial warrant reversal. Since each error alleged by Appellants is, at best, marginal, their claim based upon cumulative error is meritless.
 
 VIII
 
 40
 Appellants cursorily raise the specter of jury misconduct. The proof to which they point consists of inadmissible statements of jurors impeaching their own verdict. See Tanner v. United States, 483 U.S. 107, 116-27 (1987); United States v. Hernandez-Escarsega, 886 F.2d 1560, 1579 (9th Cir.1989), cert. denied, 110 S.Ct. 3237 (1990). Appellants cannot now complain of the district judge's determination, because he was not required under Tanner to consider statements of jurors impeaching their own verdict. Moreover, the district judge specifically found that whatever misconduct may have occurred had no effect on the verdict. Thus, this claim is meritless.
 
 IX
 
 41
 In addition to the vulnerable victim question addressed by the published opinion in this case, Appellants raise two other challenges to their sentences.
 
 
 42
 * Appellants were sentenced separately for conduct occurring before enactment of the Sentencing Guidelines and for conduct occurring after the Guidelines became effective. Appellants argue that the district court erred by failing to apportion between pre- and post-Guidelines conduct when determining the amount defrauded by Appellants for purposes of calculating their Guidelines sentences under section 2F1.1(b)(1). See United States Sentencing Commission, Guidelines Manual, § 2F1.1(b)(1) (Nov. 1990) (sentence for fraud crimes adjusted upward based on aggregate amount of money defrauded).
 
 
 43
 Appellants seem to have forgotten, however, that their post-verdict counsel recommended a level 10 increase (rather than the level 11 finding recommended by the probation service) specifically to take account of the uncertain amount of the total fraud applicable to Guidelines counts. Because Appellants requested the district court to sentence them in accord with a level 10 amount of loss characteristic, they cannot now complain of that ruling on appeal. See United States v. Sloman, 909 F.2d 176, 182 (6th Cir.1990) ("An attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course.").
 
 B
 
 44
 Finally, James Caterino argues in his reply brief that the district court improperly adjusted his Guidelines sentence upward because he obstructed justice. He did not raise this issue in his opening brief. Because it is unfair to the opposing party, this court will not consider arguments raised for the first time in a reply brief. Nevada v. Watkins, 914 F.2d 1545, 1560 (9th Cir.1990), cert. denied, 111 S.Ct. 1105 (1991).
 
 
 45
 Appellants' convictions are AFFIRMED. Pursuant to the published opinion, Appellants' sentences are VACATED and the case is REMANDED to the district court for resentencing.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 James complains without elaboration that the district court unduly hampered his cross-examination of Dawson. We have reviewed the transcript of that examination and see no abuse of discretion by the district court